[No. 32424. Department One. July 17, 1953.]

JACOB COLLINS, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Defendant*, GENERAL ELECTRIC COMPANY, *Appellant*.[1]

[1] Reported in 259 P. (2d) 643.

*Allen, Hilen, Froude, DeGarmo & Leedy* and *George C. Butler*, for appellant.

*Walthew, Gershon, Oseran & Warner*, for respondent.

MALLERY, J.—The claimant sustained an injury on February 17, 1948, while engaged in extrahazardous employment, for which he made a claim. On June 22, 1948, the supervisor of industrial insurance closed the claim without time loss or permanent partial disability, and with a denial of responsibility for claimant's knee tumor, upon the ground that it was unrelated to his injury. This order was not appealed from.

On August 24, 1948, the supervisor entered an order superseding the first one, which provided for additional medical treatment. Again no appeal was taken.

On April 5, 1949, the claimant applied to reopen his claim for aggravation of his injury. This was denied on June 7, 1949. Thereupon, claimant appealed to the board of industrial insurance appeals. A hearing was had, and the board of industrial insurance appeals affirmed the order of the supervisor. Claimant appealed to the superior court and asked for a jury trial. The jury gave him a verdict for forty per cent amputation value of the right leg below the knee and five per cent unspecified permanent partial disability.

The defendant-employer appeals, and assigns as error the denial of its motions to dismiss the action and for a new trial or for judgment notwithstanding the verdict.

In support of these assignments, the appellant contends that the order of June 22, 1948, is *res judicata*, because it was not appealed from within sixty days as required by RCW 51.52.050. It is sufficient answer to this contention that claimant sought to reopen for an *aggravation* of his injury occurring *after* the date of the order which is

claimed to be *res judicata*. Upon this point, in *Karniss v. Department of Labor & Industries*, 39 Wn. (2d) 898, 239 P. (2d) 555, we said:

"The rule is that an order of the supervisor from which no appeal is taken is *res judicata* as to any issue before the department at the time it was entered, *but is not res judicata as to any aggravation occurring subsequent to that date*." (Italics ours.)

See, also, *Donati v. Department of Labor & Industries*, 35 Wn. (2d) 151, 211 P. (2d) 503; *Lindsey v. Department of Labor & Industries*, 35 Wn. (2d) 370, 213 P. (2d) 316; and *Kleven v. Department of Labor & Industries*, 40 Wn. (2d) 415, 243 P. (2d) 488.

■ It is the essence of a claim for aggravation that claimant's condition is different from and worse than it was at the time of the prior closing of his claim. It is not necessary that there shall have been any previous permanent partial disability or time loss. *Lindsey v. Department of Labor & Industries, supra.*

■ The appellant, under its assignments of error, asserts that all of the evidence in the record is insufficient to sustain the verdict of the jury. The respondent contends that we cannot reach the merits of this assignment for the reason that appellant did not bring up a statement of facts from the superior court upon this appeal. This would be correct if the assignment of error was directed to a *dismissal of the case*, rather than a refusal to do so.

Where the trial court dismissed the case, we cannot tell, without a statement of facts, how much of the record was stricken or held inadmissible and, hence, how little of it was still available to the claimant. *Guffey v. Department of Labor & Industries*, 38 Wn. (2d) 236, 229 P. (2d) 321.

Here, however, appellant contends that the entire record does not sustain the verdict. We can, therefore, look at all of it to see if appellant's contention is correct. Although we reach the merits of this assignment of error, it is not well taken.

We now set out enough of the record to constitute a *prima facie* case sufficient to support the verdict.

■ Claimant, at the time in question, was employed by appellant-employer as an electrician. His work required him to do considerable climbing and ladder work. On February 17, 1948, claimant suffered the injury with which we are concerned, and which is best described by his testimony:

"We were wiring the first aid building and run out of electrical wire we commonly called rope and I went to the warehouse to get more and they were doing construction work and had a big ditch dug right back of the first aid building and they had no walk or catwalk on it or platform to cross those ditches and I had to go down in and out the other side, climb in and out, I went and got a roll of wire and started back to the first aid building and started down in that ditch and got in the ditch and started out the other side and I stepped on a rock and it rolled under my foot and threw me—well at the time my ankle hurt and I naturally supposed I sprained my ankle which any one would."

He further testified that his head, shoulder, and whole right side struck the rocks, which covered the ground where he fell; that he went to the hospital, was given treatment for his injured ankle, and directed to take further treatments; that at the time he received the supervisor's order closing his claim on August 24, 1948, his ankle was still sore and painful; that he was required to work at a job requiring less physical activity; that between the time his claim was closed and the time he petitioned for reopening of his claim, on the ground of aggravation, his whole foot became numb, and he developed an ailment commonly known as foot drop; that he experienced pain in his lower back during the period in question; that in November, 1948, he had a cyst removed from his right leg just below the knee, at the Veteran's Hospital; that he was a veteran of World War I, and had suffered a service injury to his right knee, which required twenty-six operations over a period of nine years; and that he had fully recovered from the war injury.

Dr. Robert M. Rankin, called by claimant, in answer to a long hypothetical question containing all the facts outlined above, testified that he diagnosed claimant's injury as a "traumatic injury to the common peroneal nerve, right leg and low back disability secondary to the posture change

produced by the injury to the right leg"; and that he arrived at his diagnosis in the following manner:

". . . first the history as given here that he had no difficulty with his right leg with the exception of the trick knee and the operations that he had subsequent to the first world war, no injury referable to this present condition until the time of the accident of February 17, 1948, and that the difficulty came on at a subsequent date to the injury, that he has on physical examination objective evidence of complete disruption of the common peroneal nerve at one site which is a point three inches below the knee on the outside of the leg. . . ."

He further testified that the low back disability was caused by the abnormal posture produced by foot drop; that the cause of the nerve injury and the low back injury was the injury received on February 17, 1948, and a stretch of the common peroneal nerve, or may have been due to an actual blow on the common peroneal nerve; that aggravation occurred between the time the claim was first closed and the time request was made to reopen the claim because of aggravation; and that the foot drop was caused by the injury to the ankle.

The judgment is affirmed.

GRADY, C. J., HILL, WEAVER, and OLSON, JJ., concur.

November 19, 1953. Petition for rehearing denied.